UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                               Case No.  1:18−cr−167

v.                                          Paul L. Maloney
                                                United States District Judge

TREBARIUS MCGEE,

      Defendant.
_____/

**MOTION FOR REDUCTION IN SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

# Exhibit F

1

April 13, 2020

| | |
|---|---|
| Muriel Bowser<br>Mayor<br>Government of the District of Columbia<br>1350 Pennsylvania Ave NW<br>Washington, DC 20004 | Timothy J. Shea<br>United States Attorney<br>United States Attorney's Office, District of Columbia<br>1100 New York Ave NW #800<br>Washington, DC 20005 |
| Robert E. Morin<br>Chief Judge<br>Superior Court of the District of Columbia<br>500 Indiana Ave NW<br>Washington, DC 20001 | Patricia K. Cushwa<br>Chair, U.S. Parole Commission<br>90 K Street, NE, #300<br>Washington, DC 20002 |
| Kevin Donahue<br>Deputy City Administrator and<br>Deputy Mayor for Public Safety and Justice<br>Government of the District of Columbia<br>1350 Pennsylvania Ave NW Suite 533<br>Washington, DC 20004 | Michael Carvajal<br>Director<br>Federal Bureau of Prisons<br>320 First St NW<br>Washington, DC 20534 |
| Phil Mendelson<br>Chairman<br>Council of the District of Columbia<br>1350 Pennsylvania Ave NW Suite 504<br>Washington, DC 20004 | LaQuandra S. Nesbitt<br>Director<br>DC Department of Health<br>899 North Capitol St NE<br>Washington, DC 20002 |
| Eleanor Holmes Norton<br>Congresswoman<br>United States House of Representatives<br>2136 Rayburn HOB<br>Washington, DC 20515 | Richard S. Tischner<br>Director<br>DC Court Services & Offender Supervision Agency<br>633 Indiana Avenue NW<br>Washington, DC 20004 |
| Quincy L. Booth<br>Director<br>DC Department of Corrections<br>2000 14th Street NW Seventh Floor<br>Washington, DC 20009 | Leslie C. Cooper<br>Director<br>DC Pretrial Services Agency<br>633 Indiana Avenue NW, Suite 1120<br>Washington, DC 20004 |

Dear Mayor Bowser, Chief Judge Morin, Deputy Mayor Donahue, Chairman Mendelson, Congresswoman Eleanor Holmes Norton, Director Booth, Mr. Shea, Chairperson Cushwa, Director Carvajal, Dr. Nesbitt, Director Tischner, and Director Cooper:

We are writing as faculty members of DC area medical schools (including *Georgetown University School of Medicine, George Washington University School of Medicine, George Washington University Milken Institute School of Public Health, and the Howard University College of Medicine*) to express our urgent concern about the spread of SARS-CoV-2, the virus which causes COVID-19 disease, in the DC Jail and the Bureau of Prisons (BOP). This is an increasingly urgent matter, as 52 incarcerated people at the DC Jail (including one death) and 15 DOC staff, as well as 352 incarcerated people (including ten deaths) in BOP and 189 BOP staff have tested positive as of April 13th. As you know, COVID-19 is highly contagious, difficult to prevent except through thorough hand washing and social distancing, and especially dangerous to individuals over age 60 or with a chronic disease, although we are seeing increasing numbers of serious cases for people outside of these categories, as well. Moreover, recent data suggest that SARS-CoV-2 can remain on surfaces for up to 72 hours and could be transmitted via aerosols (for up to 30 mins), thus undermining the utility of social distancing in circumstances where the virus is present.

Jails, prisons, detention facilities and other closed settings have long been known to be associated with high transmission probabilities for infectious diseases, including tuberculosis, multi-drug resistant tuberculosis, influenza, MRSA (methicillin resistant staph aureus), and viral hepatitis.  Several deaths were reported in the US in immigration detention facilities associated with ARDS (acute respiratory distress syndrome) following influenza A, including a 16-year-old immigrant child who died of untreated ARDS in custody in May 2019. ARDS is the life-threatening complication of COVID-19 disease and has a 30 percent mortality given ideal care. The first reported infection of an individual held in the custody of Rikers Island jail facility in New York City was on March 18th, 2020. In less than two weeks, that number has skyrocketed to 132 reported cases. This does not include individuals who may have been in the jail and released during that period. The infection rate in the Rikers Island population is 27.85 per 1,000 people. This is more than seven times the rate of New York City and Lombardy, Italy. In short, Rikers Island has proven to be an epicenter of COVID-19 transmission and a harbinger of what is to come at the DC Jail if local leaders fail to take immediate action.

The close quarters of jails and prisons, the inability to employ effective social distancing measures, the use of shared toilets, sinks, and showers, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely. While only useful for mitigating – not preventing – transmission, even items such as soap and hand sanitizers are not freely available in some facilities. Despite recommendations from the CDC for the use of alcohol-based

hand sanitizers, such products, like Purell, are banned in many facilities because they contain alcohol. Further, for incarcerated individuals who are infected or very sick, the medical staffing and infrastructure needed to properly treat them and save their lives is very limited, if available at all. Testing kits are in short supply, and prisons and jails have limited options for proper respiratory isolation.

A number of inherent features of these facilities can heighten risks for exposure, acquisition, transmission, and clinical complications of COVID-19 and other infectious diseases. These include physical/mechanical risks such as overcrowding, population density in close confinement, insufficient ventilation, shared toilets, showers, and eating environments and limited availability of hygiene and personal protective equipment such as masks and gloves in some facilities. The high rate of turnover and population mixing of staff and detainees also increases likelihoods of exposure. This has led to prison outbreaks of COVID-19 in multiple detention facilities in China, associated with introduction into facilities by staff.

Incarcerated people are generally at increased risk, due to high rates of chronic health conditions; substance use; mental health issues; and, particularly in prisons, aging and chronically-ill populations who are more likely to experience severe complications of COVID-19 and higher mortality rates. The District's incarcerated population is overwhelmingly Black and economically disadvantaged, and will be disproportionately vulnerable to these risks. Many individuals at the jail received insufficient health care in the community and the lack of consistent preventative care may exacerbate their risk for severe infection.

Prison, jail, and detention center staff may bring the SARS-CoV-2 into the facility and are also at risk of acquisition from infected incarcerated individuals. Once infected, staff may also transmit the virus back into the communities and to their families. As jail, prison, and detention center health care staff themselves get sick with COVID-19, workforce shortages will make it even more difficult to adequately address all the health care needs in facilities. And as transmission increases inside facilities, the community's medical infrastructure – including the availability of staff and equipment for the broader community – will be overwhelmed.

Every effort should be made to reduce exposure in incarceration facilities housing DC residents, and we appreciate the efforts thus far of administrators toward this goal. To ensure that there are no impediments for incarcerated people to come forward when sick, health care and appropriate testing must be available without co-pays. It will generally be extremely difficult, however, to achieve and sustain prevention of transmission in these closed settings given the design feature of the facilities. Moreover, lockdowns and use of solitary confinement should not be used as a public health measure or as a means of medically-indicated isolation, both because they have limited effectiveness and because they are a severe infringement of the rights of incarcerated

people. Indeed, there is no meaningful way to "contain" the spread of a highly contagious infection such as this in a congregate setting with the inevitable movement of people in and out, even through attempts at isolation or lockdown. It is therefore an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible.

Treatment needs of incarcerated individuals exposed to or infected with the SARS-CoV-2 also need to be met, including expanded arrangements with local hospitals. It is essential that these facilities, which are public institutions, be transparent about their plans for addressing COVID-19. Such transparency will help public health officials and families of incarcerated people know what facilities are doing, and it also can help jurisdictions across the state share information and best practices. Other counties across the country have shared their action plans with the public and the District and the BOP should follow these examples.

We therefore urge you to take the following steps:

1. Consider pretrial detention only in genuine cases of security concerns. Persons held pretrial on misdemeanor offenses and any person who does not present a genuine and serious safety concern should be released.
2. Release all individuals held for technical violations of probation, supervised release, and parole. No one in these categories should be held in jail or prison during this crisis.
3. Release all individuals serving misdemeanor sentences.
4. Require correctional facility administrators to make their plans for prevention and management of COVID-19 in their institutions publicly available, as the San Francisco Sheriff's Department has done. Protocols should be in line with local (DC DOH) and national guidance. In addition to implementing efforts to reduce the incarcerated population, for incarcerated people and staff who remain living and working in DC and BOP correctional facilities, the CDC guidance specific to correctional and detention facilities should be followed (see: https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html). Frequently updated recommendations and model protocols are also available from the National Commission on Correctional Health Care (https://www.ncchc.org/blog/covid-19-coronavirus-what-you-need-to-know-in-corrections).
5. Ensure that intake screening protocols are updated to include COVID-specific questions.
6. Ensure the availability of sufficient soap and alcohol-based hand sanitizer (with greater than 60 percent ethanol or 70 percent isopropanol) for incarcerated individuals without charge, and the freedom to wash hands as often as necessary; restrictions on alcohol (in hand sanitizers) should be suspended.

7. Implement other precautions to limit transmission within prisons and jails without relying on use of lockdowns and solitary confinement. Additional precautions jointly issued by the Vera Institute of Justice and Community Oriented Correctional Health Services are available at https://cochs.org/files/covid-19/covid-19-jails-prison-immigration.pdf
8. Expedite consideration of all older incarcerated individuals, pregnant women and those with chronic conditions predisposing to severe COVID-19 disease (heart disease, lung disease, diabetes, immune-compromise) for parole or other forms of release from prison, with alternative forms of supervision and with supports in the community once released.
9. Provide easily accessible information to those held in prison/jail about COVID-19 prevention, identification, and management, in multiple languages.
10. Invest in increased resources for discharge planning and re-entry transitions to facilitate prison release of people under these revised policies. Individuals leaving the DC Jail may have been exposed to the SARS-CoV-2 while incarcerated and should be tested upon release – if showing any symptoms and according to DC DOH guidance --  so that they can be placed in an appropriate setting. Stable housing where physical distancing is possible is also necessary to stop additional spread of the virus. Finally, a one-pager with information on how to prevent the spread (wash hands, social distancing), symptoms to be on the lookout for, and locations/phone numbers where someone can go for testing and treatment is also necessary.
11. Arrange for COVID-19 testing of incarcerated individuals and correctional facility workers who exhibit common (cough, fever) or atypical symptoms (including loss of smell, taste, gastrointestinal problems).
12. Cease any collection of fees or co-pays for medical care or for testing.
13. Seek a Medicaid 1135 waiver to enable hospitals to provide an appropriate level of care to incarcerated individuals who are sick. See https://cochs.org/files/medicaid/COVID-19-Justicie-Involved-1135-Waiver.pdf

This COVID-19 pandemic is shedding a bright light on the extent of the connection between all members of society: jails, prisons and other detention facilities are not separate, but are fully integrated with our community. As public health experts, we believe these steps are essential to support the health of incarcerated individuals, who are some of the most vulnerable people in our society; the vital personnel who work in prisons and jail; and all people in the District of Columbia.  Our compassion for and treatment of these populations impact us all.

Thank you very much.

*This letter represents the views of the following signatories, and does not necessarily reflect the views of Georgetown University School of Medicine, George Washington University School of Medicine, George*

*Washington University Milken Institute School of Public Health, or the Howard University College of Medicine*

Sincerely,

Sarah Kureshi
Family Medicine Physician, Assistant Professor
Georgetown University School of Medicine

Ronald Waldman, MD
Professor of Global Health
Milken Institute School of Public Health,
George Washington University

Ranit Mishori
Professor of Family Medicine
Georgetown University School of Medicine

Tobie-Lynn Smith
Assistant Professor of Family Medicine
Georgetown University School of Medicine

Jamie Hill-Daniel MD
Assistant Professor of Family Medicine,
Director, Residency Medical Student Education
Georgetown University School Of Medicine

Colin Stewart MD
Associate Professor, Program Director of Child and Adolescent Psychiatry, Psychiatry Clerkship Director
Georgetown University School of Medicine and MedStar Georgetown University Hospital

Daniel Merenstein MD
Professor of Family Medicine
Georgetown University

Uriyoan Colon-Ramos
Associate Professor
George Washington University

Mary Ellsberg, PhD
Director, Global Women's Institute, Professor of Global Health
Milken Institute School of Public Health,
George Washington University

Jon Andrus
Adjunct Professor of Global Health
Milken Institute School Public Health, George Washington University

Carlos Santos/Burgoa
Professor
Milken Institute School of Public Health,
George Washington University

Emily R. Smith
Assistant Professor of Global Health and Nutrition
Milken Institute School of Public Health,
George Washington University

Jennifer Muz
Assistant Professor
George Washington University Milken Institute School of Public Health

Paul Ndebele
Professorial Lecturer
Milken Institute School of Public Health,
George Washington University

John Sandberg
Associate Professor
George Washington University

James Benson MD
Assistant Professor of Gynecology
Georgetown University School of Medicine

Sarah Baird
Associate Professor of Global Health and Economics
Milken Institute School of Public Health,
George Washington University

Elise Morris MD
Associate Professor
Georgetown University

Mary Ann Dutton, Ph.D.
Professor and Vice-Chair for Research
Georgetown University Medical Center

Seble Frehywot
Associate Professor of Global Health and Health Policy
George Washington University

Nima Sheth MD
Medical Director of Georgetown Psychiatric Partial Hospitalization Program
Georgetown University

Joel Willis
Physician
George Washington University

Brian Antono, MD, MPH
Family Physician
Georgetown University

Caroline Wellbery, MD
Professor of Family Medicine
Georgetown University School of Medicine

Michael A. Stoto, PhD
Professor
Georgetown University

Kenneth Lin
Professor of Family Medicine
Georgetown University School of Medicine

Kathryn Hart MD
Associate Professor of Family Medicine
Georgetown University School of Medicine

Donna Cameron
Professor
Georgetown University School of Medicine

Kebreten F. Manaye, MD
Professor and Chair, Department of Physiology and Biophysics
Howard University College of Medicine

Krishnan Narasimhan MD
Assistant Professor, Attending Physician
Howard University College of Medicine

Oladunni Filani MD
Assistant Professor, Attending Physician
Howard University College of Medicine

Finie Hunter
Instructor
Howard University College of Medicine

David G. Miller, PhD
Assistant Professor
Georgetown University Medical Center

William Gallagher MD
Assistant Professor
Georgetown University Family Medicine Department